Receipt number AUSFCC-9793725

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**
Washington, D.C.

| | |
|---|---|
| Art Schaap, S. Renee Schaap, Highland Dairy, G.P., Sybrand R. Vander Dussen and Jenise K. Vander Dussen d/b/a Rajen Dairy, Rajen Dairy LLC, Sybrand J. Vander Dussen, Jonathan E. Vander Dussen, Daniel W. Vander Dussen, Doug Handley, Irene Handley, Dustin Handley, Do-Rene Dairy Inc., Todd Teune, Carolyn Teune, Steve Hanson, Derrell Hanson, Darren Hanson, Dean Van Dam, Desert Sun Dairy LLC, Roger Hatcher, Danette Hatcher, Paul A. Lough and Sheri V. Lough, | Case No. **24-1300C** _____ |
| | |
| Plaintiffs, | Judge _____ |
| | |
| vs. | |
| | |
| United States of America, | |
| | |
| Defendant. | |

**ORIGINAL COMPLAINT**

COME NOW the above-named plaintiffs, and by and through their undersigned attorney, assert the within enumerated allegations of fact, and law and claims for remedies before this Honorable Court against the United States of America, as follows:

**JURISDICTION**

1.   This is an action for the taking of private property without just compensation in violation of the 5th amendment to the United States Constitution resulting from the contamination of, and invasion of the properties and property interests of the plaintiffs, and each of them. Plaintiffs property interests are situated adjacent to Cannon Air Force Base in Curry County, New Mexico, and upon information and belief, through the actions of the personnel of the United States Air Force and its contractors, each of the Plaintiffs' interests enumerated herein have been contaminated by the permanent physical invasion of molecular compounds commonly known as "PFAS" substances and complicated by other invasive actions, the presence of which has substantially or entirely destroyed the rights and interests of the

1

plaintiffs and of each of them without just compensation. As will be demonstrated by the Plaintiffs, despite demand, the Defendant has failed to provide just compensation.

2.    This Court has jurisdiction over the subject matter herein by virtue of 28 U.S.C. § 1491(a)(1) and other statutory provisions.

3.    Plaintiffs assert their rights guaranteed under the 5th Amendment, to wit:

> *No person shall \* \* \* be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*

4.    The permissive joinder of the plaintiffs in this action is appropriate pursuant to Fed.R.Civ.P. Rule 20(a)(1) because the plaintiffs assert rights to relief jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and, because questions of law or fact which will arise in this action are common to all Plaintiffs.

**THE PARTIES**

5.    Attached as <u>Exhibit A</u> are satellite images of the subject area of PFAS contamination proximate to Cannon Air Force Base in Curry County, New Mexico. The image at <u>Exhibit A-1</u> shows the boundaries of the Air Base, and the approximate property boundaries of each of the Plaintiffs appearing herein. The image at <u>Exhibit A-2</u> shows an adaptation the Air Force's designated "Zone of Concern" published in 2019, and its 2023 "Area of Presumed Contamination" overlaying the satellite image.

6.    Plaintiffs Art and Renee Schaap (the "Schaaps") are general partners in Highland Dairy, a New Mexico General Partnership ("Highland") which has been contaminated by permanent physical invasion of the Defendant's PFAS compounds. The husband and wife started the dairy in 1992. Through titular interests, real estate purchase contracts, and lease / option agreements the Schaaps control 3,593 acres of land with improvements including residences, offices, wells, farm buildings, etc. designed to accommodate 5,300 cows and cattle adjacent to Cannon Air Force Base. Highland touches the Southern fence line and Southeastern corner of Cannon Air Force Base and stretches nearly 2.5 miles to the South and Southeast. (See <u>Exhibit A-1</u>, "Highland Dairy".)

7.  Since 1996, Plaintiffs Sybrand R. ("Randy") and Jenise Kay Vander Dussen have been the owners of approximately 1,550 acres of real property with improvements thereon abutting the Eastern fence line of Cannon Air Force Base which is referred to commercially as "Rajen Dairy I". They are also the owners of approximately 800 acres of real property with improvements thereon less than two miles from Cannon Air Force Base; this property is known as "Rajen Dairy II". The properties are home to Plaintiff Rajen Dairy LLC, a New Mexico limited liability company which operates the dairy properties, producing milk and beef products from more than 13,000 cows, and is owned by them and their sons, including Plaintiffs Sybrand J. Vander Dussen, Jonathan E. Vander Dussen and Daniel W. Vander Dussen. Each of the Vander Dussen family members are citizens of the United States and residents of New Mexico and together they are referred to as the Rajen Dairy Plaintiffs. (*See* Exhibit A-1, "Rajen Dairy 1" and "Rajen Dairy 2".)

8.  Since 1997, husband and wife Plaintiffs Doug and Irene Handley and their son, Dustin Handley, have been the owners of approximately 860 acres of real property with improvements thereon adjacent to Cannon Air Force Base as general partners in Do-Rene Dairy, G.P. and, subject to a recent agreement reached with the Vander Dussen Plaintiffs for operations, produces milk and beef products from 5,600 cows. Each of the Handley family members are citizens of the United States and residents of Texas. Together they are referred to as the Do-Rene Dairy Plaintiffs. (*See* Exhibit A-1, "Do-Rene Dairy".)

9.  Beginning in 1997 and continuing to today, husband and wife Plaintiffs Todd and Carolyn Teune have been the owners of approximately 640 acres of real property with improvements thereon approximately 1.5 miles East of Cannon Air Force Base with operations producing milk and beef products as "DayStar Dairy" from more than 4,000 cows. (*See* Exhibit A-1, "DayStar Dairy".) Mr. and Mrs. Teune are citizens of the United States and residents of New Mexico. They are referred to herein as the Day-Star Dairy Plaintiffs.

10.  Plaintiffs Steve Hanson, Darrell Hanson, Darren Hanson, and Dean Van Dam are citizens of the United States and residents of New Mexico. They are owners of Desert Sun Dairy LLC, a New Mexico

limited liability company which is situated approximately 3 miles Southeast of Cannon Air Force Base. (*See* Exhibit A-1, "Desert Sun Dairy".)

11. Plaintiff Roger Hatcher is a citizen of the United States and a resident of Texas. He is the developer and owner of some 24 residential property lots within the 80-acre Norman Rose subdivision with water rights in Curry County, New Mexico, situated approximately 1.5 miles east of the Eastern fence line of Cannon Air Force Base. (*See* Exhibit A-1, "Norman Rose Subdivision".) He and his wife, Danette Hatcher, also a US citizen and resident of Texas, owned a residential property adjacent to the Norman Rose subdivision which was unmarketable at assumed market values given the presence of PFAS in the region. In 2022, their residence was sold for approximately ½ of its assumed fair market value (even with no PFAS measured upon the property but in consideration of the advancing plume in the region).

12. Plaintiffs Paul A. Lough and Sheri V. Lough are citizens of the United States and residents of Curry County, New Mexico in a home and have real property slightly more than one mile from the Southeast corner of Cannon Air Force Base. (*See* Exhibit A-1, "Lough Property".)

13. Defendant is the United States of America (the "Government").

## FACTS COMMON TO ALL CLAIMS

14. Beginning in 1970 and continuing for nearly 50 years, the U.S. Department of Defense used Aqueous Film-Forming Foam products (AFFFs) containing PFAS substances at Cannon Air Force Base which were released during training exercises, base operations, equipment maintenance, through both controlled and unplanned releases, etc. into the earth and into its surface waters of Curry County, New Mexico.

15. Plaintiffs estimate that some 17.6 million gallons of PFAS compound solutions were released over these years. These releases made their way to groundwater resources belonging to the State of New Mexico and were conveyed in down-gradient flows through the Ogallala Aquifer to neighboring properties of the Plaintiffs.

16. The sole source of PFAS in the areas impacted by the Plaintiffs in this case is Cannon Air Force Base.

17. Based on research conducted by the Government and its contracting counterparties over many years, PFAS compounds have been shown to be persistent, bio-accumulating toxic and carcinogenic toxins which cause permanent health damage and can lead to death. PFAS compounds endanger human health, livestock health, milk and milk products, the environment, including agricultural crops grown for livestock and those designed to enter the American human food chain. Once the PFAS compounds enter soil, it contaminates the crops grown upon that soil, and on information and belief, renders it worthless.

18. Without knowledge of the Government's contamination activities, Plaintiffs established residential properties and lived upon the contaminated properties, raising their families on the contaminated water. Several of the plaintiffs built and expanded dairy operations on their properties neighboring Cannon Air Force Base with a total of more than 200 employees consuming the contaminated drinking water at these locations. They raised thousands of cattle, procured and shipped billions of gallons of milk to American consumers without the insight that the Government had or should have had to the presence of the PFAS compounds in the water. Those of the plaintiffs who are farmers irrigated their farmland with contaminated water and harvested crops containing the same, generally feeding the same to the cattle on their dairy herds.

19. Beginning in late 2018, Plaintiffs Rajen Dairy (and the Vander Dussens), Do-Rene Dairy (and the Handleys), and DayStar Dairy (and the Teunes), began to take remedial efforts to protect their water supplies and their dairy herds and the dairy products and beef products produced on their respective dairies. These remedial actions came at great expense, yet they remain on contaminated soils and must operate with the economic and commercial risk disadvantages of warding off contamination from their dairy operations.

20. For Highland Dairy (and the Schaaps), the news about the Government's contamination of their dairy came too late. The Schaaps lost their dairy milk sales contract, lost their State of New Mexico dairy permit, were required to quarantine their dairy herd on-site, were refused the opportunity to sell their

dairy cows for beef, were threatened with criminal consequences to selling or exporting the beef, and were eventually forced to kill and bury some 3,600 adultered cattle in approved composting trenches on their dairy property, just one mile from Cannon Air Force Base.

21.  The cost of PFAS remediation of water is high. The EPA has limited PFAS in drinking water to as few as four parts per trillion of some PFAS substances. Until recently, such measurements were impractical with readily available testing methods and some such tests have detection limits that are in excess of the required purity standards. Nationwide, the Safe Drinking Water Act has been invoked to mandate the Department of Defense to purify the Plaintiff's drinking water resources when contaminated by Department of Defense activities as is the case here. However, these Plaintiffs survive on groundwater brought to the surface by permitted wells. The Government has either failed or refused to test for these compounds in some of the Plaintiffs' drinking water resources adjacent to Cannon Air Force Base, and in all but one instance where it has done so, it has failed to provide clean water to the Plaintiffs in this action where it has tested water and found the presence of PFAS compounds. Beginning in 2000, the U.S. Congress required the Department of Defense to purify or provide alternate sources of clean water for agricultural water that is determined to be contaminated with PFAS. To date, the Department of Defense has refused to comply with this statutory requirement. Since the EPA lowered the drinking water standard from 70 parts per trillion to 4 and 10 ppt nearly five months ago (depending on the substance), the Government has done nothing to revisit the testing of Plaintiffs' water or provide more rigid, compliant purification of drinking water. Instead, in another location (Tucson, Arizona), the Department of Defense announced its intention to reject the actions of the Environmental Protection Agency designed to protect and purify water resources.

22.  Recently, the New Mexico Environmental Department stepped up its standard for dairy lagoon water and imposed permitting standards on refuse water that are comparable to the federal drinking water standards. These lagoon water resources include run-off from rainwater upon the contaminated soils of the dairy properties. If a violation were to be found, at any moment the dairy Plaintiffs could see their dairy permits cancelled and be forced out of business immediately. The Government's PFAS

contamination thus creates the prospect of an uncontrollable permitting consequence to the Government's invasion of the properties, and an intolerable burden on commercial operations.

23. The consequence of observing even nominal levels of PFAS in dairy milk requires its removal from markets and the dumping of the products at the source. Such a finding leads directly to the termination of commercial sales contracts as was experienced by the Plaintiffs at Highland Dairy. The other dairy operating Plaintiffs in this action are at risk of such a determination and the attendant commercial devastation.

24. The practicality of remediating dairy cattle adultered by PFAS compounds has led the US Department of Agriculture ("USDA") and the U.S. Food & Drug Administration ("FDA") to mandate the animal's quarantine and require their euthanasia, and the costs of remediating PFAS from soil has been estimated to cost a minimum of 200 times ($570,000) and as much as 600 times ($1,700,000) the value of the each acre of contaminated dairy land in New Mexico where the plaintiffs are situated. Residential and commercial property values are likewise reduced to nothing or negligible amounts and the risk that the Environmental Protection Agency's ("EPA's") recent designation of certain of these compounds to the "Superfund"[1] list of compounds creates the legal obligation for the burden of the cost of clean-up on each of the Plaintiffs' properties contaminated by the Government.

25. The actions of the United States amount to an inverse condemnation in violation of the Fifth Amendment of the United States Constitution, which prohibits the taking of private property by the Government without payment of just compensation.

26. With the exception of some undervalued partial payments to Highland Dairy Plaintiffs for dumped milk and cows destroyed by the Air Force PFAS contaminations and adulterations, the United States has failed and/or refused to offer or tender such just compensation to the Plaintiffs.

---

[1] On April 10, 2024, Per- and Polyfluorooctane Sulfonate ("PFOS") and Per- and Polyfluorooctane Acid ("PFOA") compounds were designated as hazardous substances under the Comprehensive Environmental Resource Conservation & Liability Act by the EPA, among other actions taken to restrict contamination.

27.  Based on a study prepared for Cannon Air Force Base and first made public on August 24, 2018, the Air Force began to disclose that it had detected PFAS on its Government property. Letters issued that day to some of the Plaintiffs suggested that contaminants could be present in the ground water on the neighboring properties. Water testing began immediately thereafter with the first results being secured by some of the Plaintiffs as early as mid-September 2018. Private water filtration systems were installed thereafter to protect Rajen Dairy, Do-Rene Dairy, and DayStar Dairy.

28.  In October 2018, Highland Dairy began testing its milk, soil, crops, and the blood serum of its herd animals as the level of PFAS contamination began to reveal itself and its operations began to be decimated by the Government's destruction of the Schaaps' property interests and values. Highland Dairy's dairy farming neighbors have incurred, on information and belief, the complete devaluation of their farmland and physical properties, and remain at risk of replicating the trauma caused by the Government at Highland Dairy while actively taking steps to try to avoid the destruction of their business interests and property values; however, this is an unsustainable formula for their lives and livelihoods.

**FOR A FIRST CAUSE OF ACTION**
(Takings Clause Violation - Plaintiffs Art Schaap, S. Renee Schaap
and Highland Dairy)

29.  Plaintiffs here-named restate the foregoing allegations of fact and further state that beginning in September 2018, the Schaaps and Highland became aware that the dairy herd, its milk, soils, water supply, crops grown upon the dairy farm property, dairy farm structures and improvements, inventories, wells, dairy milk contracts and coop association interests, commercial permits, rights to sell products and goods (including the imposition of a quarantine of adultered cattle), water rights, and other property interests have all been destroyed by the Government's actions.  Upon becoming aware of the Government's invasion of their property rights, the Schaaps also realized that the marked decline in sales of milk from their cows in the years of 2009 to 2018 was attributable to the presence of PFAS in the adultered dairy cow herd in those pre-discovery years.

30. Highland Dairy was forced out of business, compelled to become a science lab for research performed by the USDA Farm Safety & Inspection Service and the US Food & Drug Administration which quarantined its entire dairy herd. The Schaaps were compelled to continue milking and dumping millions and millions of gallons of PFAS-infused dairy milk from 2018 to 2020, and oversee the gradual decimation of the dairy herd succumbing to illness and death from 2018 to 2022, to seek authorization to purposely kill off by a gun to the head, or more politely "depopulate" the remaining 1,500 or so cattle who survived the quarantine for 3.5 years, expend every possible financial resource to attempt to keep the animals alive as long as possible at the instruction of the USDA, including selling equipment, liquidating savings accounts, all while attempting to avoid bankruptcy over the six years since the Air Force made public its disclosure of PFAS on Cannon Air Force Base.

31. The Government has no water rights. It falsely asserted, in defiance of the authority of the New Mexico State Engineer and without compliance with any state law governing the control of subterranean water rights, that it has an unfettered and unrestricted right to capture and redirect millions of gallons of groundwater daily for their own purposes which rights are, pursuant to state law, within the longstanding permitted rights belonging to the Schaaps and Highland. In furtherance of this usurpation of the Plaintiffs' water rights, the Government has drilled extraction, testing, and monitoring wells, immediately adjacent to Highland's permitted wells (destroying all conventions about protecting existing rights as typically controlled by the State Engineer), as well as drilled injection wells far from Highland Dairy, all of which has caused and will cause the further taking of property without just compensation.

32. Additionally, the Government has, without legal authority, taken action in 2024 under a mischaracterization of rights afforded under the color of law of the State of New Mexico's Department of Transportation to physically occupy Plaintiffs' land and drill multiple wells upon the property of Highland Dairy without legal authority, without the consent of the landowner, and without just compensation.

33. On information and belief, the soils of Highland Dairy have been contaminated by the irrigation of farmland with contaminated ground water, the conditioning of soil on the farm with manure from the

dairy herd, the residue of 3,665 composting PFAS-laden dairy cow carcasses, and the processing and transmission of stormwater runoff water across the properties. The contaminated land is subject to the Superfund law and is now subject of an obligation for its clean-up. Its market value, and that of the improvements thereon, has been substantially eliminated. Any future owner of the dairy property must be placed on notice of the presence of the contaminants and the Superfund status. Taken together, the Government has taken substantially all or all of the value of Highland Dairy from the Schaaps without just compensation.

34.  Plaintiffs Art Schaap and Renee Schaap filed a claim for relief under the Federal Tort Claims Act and upon being denied relief, commenced an action in tort[2] in 2019 against the United States in the U.S. District Court of South Carolina where a Multi-District Litigation proceeding (*In Re Aqueous Film-Forming Foam Products Liability Litigation*, D.S.C. Case No. 2:18-MN-2873-RMG) ("AFFF MDL") was pending and remains pending. Another action against certain chemical companies remains pending in that AFFF MDL forum as well.[3]

35.  A majority of Highland Dairy is within the 2019 "Zone of Concern" map and the 2023 "Area of Presumed Contamination" designations published by the U.S. Air Force. (*See* Exhibit A-2.)

36.  Their damages shall be determined by the finder of fact, but are believed to be in excess of $105 million.

37.  Plaintiffs reserve the right to determine and assert other forms of property takings. The Schaaps' and Highland Dairy's damages, including but not limited to lost milk sales from 2009 forward, shall be determined by the finder of fact, to include pre-judgment interest thereon and costs.

### FOR A SECOND CAUSE OF ACTION
(Takings Clause Violation – Plaintiffs Sybrand R. Vander Dussen,
Jenise K. Vander Dussen, Sybrand J. Vander Dussen, Jonathan E. Vander Dussen,
Daniel W. Vander Dussen, Rajen Dairy LLC)

---

[2] *Schaap v. United States*, D.S.C. Case No. 2:19-CV-3288-RMG, with claims sounding in (a) Negligence, (b) Nuisance, (c) Trespass, and (d) Failure to Warn.

[3] *Schaap v. The 3M Company, et al.*, D.N.M. Case No. 2:19-CV-105-KRS-GBW, transferred to D.S.C. as Case No. 2:19-CV-1644-RMG.

38. Plaintiffs above-named restate the foregoing allegations of fact at paragraphs 14 to 28, and further state that The Rajen Dairy properties consist of the 2,350 acres referenced above, as well as dairy parlor facilities, outbuildings, calve hutches, employee facilities, scales, barns and other storage facilities, offices, residences, all maintained to a high standard, but for the omnipresence of the PFAS contamination upon the properties.

39. Following the Air Force's PFAS announcement in late August 2018, and beginning in or about September 2018, the Rajen Dairy Plaintiffs conducted testing of their ground water wells at Rajen Dairy I and determined that, with water testing at marginally acceptable levels, they would invest in and install PFAS filtration equipment on the water supplies reaching the dairy herd at Rajen Dairy I. They continue to monitor the wells at Rajen Dairy II for the presence of PFAS compounds.

40. The Government has no water rights. It falsely asserted, in defiance of the authority of the New Mexico State Engineer and without compliance with any state law governing the control of subterranean water rights, that it has an unfettered and unrestricted right to capture and redirect millions of gallons of groundwater daily for their own purposes which rights are, pursuant to state law, within the longstanding permitted rights belonging to the Rajen Dairy Plaintiffs. In furtherance of this usurpation of the Plaintiffs' water rights, the Government has drilled extraction, testing, and monitoring wells, immediately adjacent to Rajen Dairy's permitted wells (destroying all conventions about protecting existing rights as typically controlled by the State Engineer), as well as drilled injection wells far from Rajen Dairy, all of which has caused and will cause the further taking of property without just compensation.

41. Additionally, the Government has, without legal authority, taken action in 2024 under a mischaracterization of rights afforded under the color of law of the State of New Mexico's Department of Transportation to physically occupy the Rajen Dairy Plaintiffs' land and drill multiple wells upon the property of Rajen Dairy I without legal authority, without the consent of the landowner, and without just compensation.

42.  At the time that Randy and Jenise Vander Dussen acquired Rajen Dairy I, the farmland at the Rajen Dairy I was under a license agreement with the U.S. Air Force and the previous owner had accepted surface water from an Air Force source known as the "North Playa Lake" on Cannon Air Force Base later shown to be contaminated with PFAS. Prior to that revelation, for a period of years, the Rajen Dairy Plaintiffs continued to utilize this surface water for agricultural purposes but the parties terminated the supply agreement in or about 2006 and the Air Force reportedly diverted this water to its Golf Course irrigation project on the base. Consequently, on information and belief, Rajen Dairy has a composite of both ground water, surface water and manure spread on some of the northern farmland of the dairy. On information and belief, the southern farmland of the dairy is contaminated by irrigated groundwater containing PFAS and manure that has been spread on the farm.

43.  On information and belief, the soils of Rajen Dairy I and Rajen Dairy II have been contaminated by the irrigation of farmland with contaminated ground water with Air Force PFAS, the historic deposit of Air Force PFAS-contaminated surface water at Rajen Dairy I, the conditioning of soil on both farms with manure from the dairy herds that consumed the groundwater, and the processing and transmission of stormwater runoff water across the properties. The contaminated land is subject to the Superfund law and is now the subject of an obligation for its clean-up. Its market value, and that of the improvements thereon, has been substantially eliminated. Any future owner of the dairy properties must be placed on notice of the presence of the contaminants and the Superfund status. Taken together, the Government has taken substantially all or all the value of Rajen Dairy I and Rajen Dairy II, including water rights thereon, from the Rajen Dairy Plaintiffs without just compensation.

44.  The majority of both of the Rajen Dairy properties are within the 2019 "Zone of Concern" map and the 2023 "Area of Presumed Contamination" designations published by the U.S. Air Force. (*See* Exhibit A-2.)

45.  Their damages shall be determined by the finder of fact, but are believed to be in excess of $50 million.

46. The Rajen Dairy Plaintiffs submitted a claim pursuant to the Federal Tort Claims Act, and upon the same being denied, commenced an action sounding in tort against the United States and various chemical company defendants in December 2020, which action remains pending at this time.[4]

### FOR A THIRD CAUSE OF ACTION
(Takings Clause Violation – Plaintiffs Doug Handley, Irene Handley,
Dustin Handley and Do-Rene Dairy, G.P.)

47. Plaintiffs above-named restate the foregoing allegations of fact at paragraphs 14 to 28, and further state that the Do-Rene Dairy property hosts a large dairy parlor facility, outbuildings, calve hutches, employee facilities, scales, barns and other storage facilities, offices, a residence, and all maintained to a high standard, but for the omnipresence of the PFAS contamination upon the property.

48. Following the Air Force's PFAS announcement in August 2018, and beginning in late 2018, the Do-Rene Dairy Plaintiffs started conducted testing of their ground water wells and eventually determined that, with water testing at marginally acceptable levels, but with the flow of the contamination plume intensifying on Do-Rene Dairy, they would invest in and install PFAS filtration equipment on the water supplies reaching the dairy herd at the dairy. They continue to monitor their wells for the presence of PFAS compounds.

49. On information and belief, the farmland of the dairy is contaminated by groundwater containing the Air Force PFAS and cow manure that has been spread for the conditioning of soil on the farm from the dairy herd that consumed the groundwater, and the processing and transmission of runoff water across the property. The contaminated land is subject to the Superfund law and is now the subject of an obligation for its clean-up. Its market value, and that of the improvements thereon, has been substantially eliminated. Any future owner of the dairy properties must be placed on notice of the presence of the contaminants and the Superfund status.

---

[4] *Vander Dussen v. The 3M Company, et al.*, D.S.C. Case No. 2:20-CV-4191-RMG) includes claims against the United States for (a) Negligence, (b) Products Liability – Failure to Warn, (c) Private Nuisance, (d) Trespass, (e) Inverse Condemnation, and corresponding claims against chemical company defendants. (The Rajen Dairy Plaintiffs intend to withdraw their Inverse Condemnation claim in the District Court in light of the commencement of this proceeding.)

50.  The majority of Do-Rene Dairy is within the 2019 "Zone of Concern" map and the 2023 "Area of Presumed Contamination" designations published by the U.S. Air Force. (*See* Exhibit A-2.)

51.  Taken together, the Government has taken substantially all or all the value of Do-Rene Dairy, including water rights, from the Do-Rene Dairy Plaintiffs without just compensation.

52.  Their damages shall be determined by the finder of fact, but are believed to be in excess of $30 million.

53.  The Do-Rene Dairy Plaintiffs submitted a claim pursuant to the Federal Tort Claims Act, and upon the same being denied, commenced an action sounding in tort against the United States and various chemical company defendants in December 2020, which action remains pending at this time.[5]

**FOR A FOURTH CAUSE OF ACTION**
(Takings Clause Violation – Plaintiffs Todd Teune and Carolyn Teune)

54.  Plaintiffs above-named restate the foregoing allegations of fact at paragraphs 14 to 28, and further state that the DayStar Dairy property hosts a large dairy parlor facility, outbuildings, calve hutches, employee facilities, scales, barns and other storage facilities, offices, residences, and all are maintained to a high standard, but for the omnipresence of the PFAS contamination upon the property.

55.  Following the Air Force's announcement in late August 2018, the DayStar Dairy Plaintiffs began conducted testing of their ground water wells finding the compounds on their property and determined that with the flow of the contamination plume intensifying in the vicinity of DayStar Dairy, they would invest in and install PFAS filtration equipment on the water supplies reaching the dairy herd at the dairy. They continue to treat their dairy water and monitor their wells for the presence of PFAS compounds.

56.  On information and belief, the farmland of the dairy is contaminated by groundwater containing the Air Force PFAS and cow manure that has been spread for the conditioning of soil on the farm from the dairy herd that consumed the groundwater, and the processing and transmission of stormwater runoff

---

[5] *DoRene Dairy GP v. The 3M Company, et al.*, D.S.C. Case No. 2:20-CV-4263-RMG includes claims against the United States for (a) Negligence, (b) Products Liability – Failure to Warn, (c) Private Nuisance, (d) Trespass, (e) Inverse Condemnation, and corresponding claims against chemical company defendants. (The Do-Rene Plaintiffs intend to withdraw their Inverse Condemnation claim in the District Court in light of the commencement of this proceeding.)

water across the property. The contaminated land is subject to the Superfund law and is now subject of an obligation for its clean-up. Its market value, and that of the improvements thereon, has been substantially eliminated. Any future owner of the dairy property must be placed on notice of the presence of the contaminants and the Superfund status.

57. The entirety of DayStar Dairy is within the 2019 "Zone of Concern" map and the 2023 "Area of Presumed Contamination" designations published by the U.S. Air Force. (*See* Exhibit A-2.)

58. Taken together, the Government has taken substantially all or all the value of Day-Star Dairy from the DayStar Dairy Plaintiffs without just compensation.

59. Their damages shall be determined by the finder of fact, but are believed to be in excess of $30 million.

60. The DayStar Dairy Plaintiffs submitted a claim pursuant to the Federal Tort Claims Act, and upon the same being denied, commenced an action sounding in tort against the United States in November 2019, which action remains pending at this time.[6] Another action against chemical companies was filed in New Mexico and is also pending in the AFFF MDL proceeding.[7]

### FOR A FIFTH CAUSE OF ACTION
(Takings Clause Violation – Plaintiffs Steve Hanson, Derrell Hanson, Darren Hanson, Dean Van Dam, and Desert Sun Dairy, LLC)

61. Plaintiffs above-named restate the foregoing allegations of fact at paragraphs 14 to 28, and further state that the Desert Sun Dairy property hosts a large dairy parlor facility, outbuildings, calve hutches, employee facilities, scales, barns and other storage facilities, offices, residences, and all are maintained to a high standard, but for the omnipresence of the PFAS contamination upon the property.

62. Following the Air Force's announcement in late August 2018, and subsequently thereafter, the Desert Sun Dairy Plaintiffs conducted testing of their ground water wells and determined that with the flow of the contamination plume intensifying as it moves to the Southeast, their property could be in

---

[6] *Carolyn Teune and Todd Teune v. United States*, D.S.C. Case No. 2:19-CV-3290-RMG includes claims for (a) Negligence, (b) Nuisance, (c) Trespass, and (d) Failure to Warn.
[7] *Todd Teune and Carolyn Teune v. The 3M Company, et al.*, D.N.M. Case No. 2:19-CV-162, transferred to D.S.C. as Case No. 2:19-CV-1645-RMG.

danger of PFAS contamination. Testing reflected the presence of compounds in their groundwater, although well below the limits established by the EPA in 2016. They continue to monitor their wells for the presence of PFAS compounds.

63.  On information and belief, the farmland of the dairy is likely to be contaminated by groundwater containing the Air Force PFAS and potentially from the cow manure that has been spread for the conditioning of soil on the farm from the dairy herd that consumed the groundwater, as well as from the processing and transmission of stormwater runoff water across the property. The contaminated land is subject to the Superfund law and is now likely to be the subject of an obligation for its clean-up. In such a case, its market value, and that of the improvements thereon, will have been been substantially eliminated. Any future owner of the dairy property must be placed on notice of the presence of the contaminants and the Superfund status.

64.  The majority of Desert Sun Dairy is within the 2019 "Zone of Concern" map and the 2023 "Area of Presumed Contamination" designations published by the U.S. Air Force. (*See* Exhibit A-2.)

65.  Taken together, the Government has likely taken substantially all or all the value of Desert Sun Dairy from the Desert Sun Dairy Plaintiffs without just compensation.

66.  Their damages shall be determined by the finder of fact, but are believed to be in excess of $30 million.

67.  The Desert Sun Dairy Plaintiffs commenced an action in the District of South Carolina AFFF MDL sounding in tort (products liability) against several chemical companies in January 2022.[8] This action remains pending at this time.

**FOR A SIXTH CAUSE OF ACTION**
(Takings Clause Violation – Plaintiffs Roger Hatcher and Danette Hatcher)

68.  Plaintiffs above-named restate the foregoing allegations of fact at paragraphs 14 to 28, and further state that the twenty-three 1.75 acre properties, and another measuring 6.4 acres (24 in total), within the Norman Rose subdivision are unmarketable given the market conditions surrounding the Air Force's

---

[8] *Desert Sun Dairy LLC v. The 3M Company, et al.*, D.S.C. Case No. 2:22-CV-180-RMG.

PFAS contamination in water surrounding the subdivision. The subdivision's water rights belong to Plaintiff Roger Hatcher. Not a single parcel has sold since (a) the Air Force made its announcement that the Air Force base was contaminated, (b) the Air Force published a "Zone of Concern" map on its website in or about January 2019 which incorporated 100% of the Norman Rose subdivision, (c) the Air Force began holding meetings advising the public about the scope and scale of the PFAS plume and interminable, long-term clean-up plans for the base itself, (d) the absence of any plan for remediation of neighboring water resources or land, and further, (e) Highland Dairy (situated immediately across a property boundary from the subdivision) very publicly became the epicenter of PFAS contamination in the Western United States.

69.  Accordingly, Plaintiff Roger Hatcher has been deprived of all or substantially all of the value of the real property in the Norman Rose subdivision by the permanent physical invasion of the property in addition to the stigma associated with the contamination of the property in the midst of the entire region.

70.  Plaintiff Hatcher intends to further test the subdivision groundwater for Air Force PFAS contamination.

71.  Plaintiffs Roger and Danette Hatcher owned a home adjacent to the Norman Rose Subdivision with water rights and determined to sell the home in 2021. Plaintiffs were required to secure a PFAS water test of the ground water well for the property which the buyers and market advisors working with the Hatchers determined made the property unmarketable at assumed market values given the presence of PFAS in the region, if not in the water itself. In 2022, the Hatcher residence was sold for $84.30 per square foot, or approximately 1/2 of its assumed fair market value in excess of $160 per square foot (assuming no PFAS upon the property or within the impacted region).

72.  The entirety of the Norman Rose Subdivision and the location of the Hatcher residence (sold in 2022) are within the 2019 "Zone of Concern" and 2023 "Area of Presumed Contamination" designations published by the U.S. Air Force. (*See* Exhibit A-2.) Further, Curry County has reduced the assessed value of the Norman Rose subdivision by 50% in light of the Air Force PFAS contamination plume, and are expected to reduce the assessed value further.

73.  Accordingly, Plaintiffs Roger and Danette Hatcher have been deprived of substantially all of the value of the residential real property which they owned and were compelled to sell at a significant discount, by the threat of the permanent physical invasion of the property of Air Force PFAS compounds in addition to the stigma associated with the contamination of the entire region.

74.  Their damages shall be determined by the finder of fact but are believed to be in excess of $4,800,000.

## FOR A SEVENTH CAUSE OF ACTION
(Takings Clause Violation – Plaintiffs Paul A. Lough and Sylvia V. Lough)

75.  Plaintiffs Paul and Sylvia Lough reside in their home in rural Curry County, New Mexico in which Mr. Lough was raised and which has been in Mr. Lough's family for at least two generations. The couple is retired.

76.  The property is located in the midst of Highland Dairy's diverse properties and is directly atop the Ogallala Aquifer which has been contaminated with Air Force PFAS. The property is believed to be contaminated with PFAS.

77.  The Loughs drinking water comes from a ground water well. On information and belief, the same is contaminated, but the U.S. Air Force has never approached the homeowners about the need for testing in order to protect the health of their sole source of water. The Lough's property contains a historic and rustic hand-built barn structure which has been used to host receptions, weddings, etc.

78.  Through irrigation of the residential landscaping, etc. and routine household applications of ground water, the contaminated land is subject to the Superfund law and is now the subject of an obligation for its clean-up. Its market value, and that of the improvements thereon, as well as the value of the water rights on this property has been substantially eliminated. Any future owner of the Lough Property must be placed on notice of the presence of the contaminants and the Superfund status.

79.  The entirety of the Lough Property is within the 2019 "Zone of Concern" and 2023 "Area of Presumed Contamination" designations published by the U.S. Air Force. (*See* Exhibit A-2.)

80. Accordingly, Plaintiffs Paul & Sylvia Lough have been deprived of substantially all of the value of the residential real property which they own, by the permanent physical invasion of Air Force PFAS and the increasing likelihood of continued contamination of the property, in addition to the stigma associated with Highland Dairy and the entire region in which their home is situated.

81. Their damages shall be determined by the finder of fact but are believed to be in excess of $400,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and severally, demand judgment against Defendant and request the following relief from this Honorable Court:

(a) Assert jurisdiction over the Plaintiffs and the Defendant and the subject matter asserted herein, affording the Plaintiffs the opportunity to amend any action now pending in another forum which may have presented a claim which is properly before this Court (i.e. Inverse Condemnation, etc.);

(b) Render judgment against the United States upon the Claims presented herein and each of them, and to provide an entire remedy and to complete the relief afforded by the judgment, including issuing orders incident of or collateral to any such judgment;

(c) Award to Plaintiffs general, compensatory, consequential, and nominal damages including, but not limited to, the fair market value of the subject properties which have been substantially destroyed and economically decimated as a result of the Air Force PFAS Contaminations, including, but not limited to:

    a. Diminution in the Fair Market Value of real property values, including improvements thereupon;

    b. Diminution in the Fair Market Value of values of water rights associated with the Plaintiffs' property interests;

    c. The Full Fair Market Value of livestock sales avoided or prohibited;

    d. The Full Fair Market Value of dairy product sales avoided or prohibited;

e.  Business operating losses to date, in the future, and for any and all business disruption that has been or may be incurred;

f.  Assets and operational expenses invested and incurred to remediate the Government's contaminants as a necessity of protecting the environment and the human food chain pursuant to CERCLA Superfund dictates or for the benefit of the Government, *quantum meruit*, including:

   i.  Contaminated water testing, filtration, pumping, and herd management;

   ii.  Contaminated milk pumping and dumping;

   iii.  Contaminated cow maintenance;

   iv.  Contaminated cow depopulation, storage and removal;

   v.  Otherwise as will be determined by the finder of fact.

g.  Expenses incurred in exploring, analyzing and communicating the status of the Plaintiffs' conditions to regulatory authorities and the Government;

h.  Costs of relocation of Plaintiffs' residences and business enterprises;

(d)  Award to Plaintiffs attorneys' fees and costs, as provided by law;

(e)  Award pre-judgment and post-judgment interest as provided by law; and,

(f)  Award all such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED:**

DOMENICI LAW FIRM P.C.

  /s/ Pete V. Domenici, Jr.
By: Pete V. Domenici, Jr.
320 Gold Avenue S.W., Ste.1210
Albuquerque, New Mexico  87102
Mailing Address:
P.O. Box 4295
Albuquerque, New Mexico  87196-4295
Tel: (505) 883-6250
email: pdomenici@domenicilaw.com

23 August 2024
Albuquerque, New Mexico