**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ART SCHAAP, et al., | ) |
| | ) |
| Plaintiffs, | ) No. 24-1300 |
| | ) |
| v. | ) Judge Armando O. Bonilla |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## THE UNITED STATES' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the United States Court of Federal Claims, the Court should dismiss Plaintiffs' claims because this Court lacks subject matter jurisdiction, and Plaintiffs fail to state a claim. A memorandum in support of this motion follows.

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    I.     AFFF Usage at Cannon................................................................................ 2

    II.    PFOS and PFOA Background..................................................................... 2

    III.   Air Force Efforts to Address PFAS ............................................................ 4

    IV.   Currently Pending District Court Litigation .............................................. 5

    V.    Air Force Monitoring Wells ....................................................................... 6

    VI.   Plaintiffs' Takings Claims .......................................................................... 6

STANDARD OF REVIEW ...................................................................................... 7

ARGUMENT ........................................................................................................... 8

    I.     The Court Should Dismiss the Complaint Pursuant to Rule 12(b)(1)
          Because It Lacks Subject Matter Jurisdiction........................................... 8

         A.   This Court Has No Jurisdiction Over Claims that are Already
             Proceeding in District Court ................................................................ 8

         B.   Several of Plaintiffs' Claims Are Unripe ................................................. 10

             i.     Plaintiffs Who Have Failed to Allege Current PFAS
                   Contamination Do Not Have Ripe Claims.................................... 10

             ii.    Highland Dairy's and Rajen Dairy's Well Claims are Unripe
                   Because the United States Has Not Drilled Wells On Their
                   Property........................................................................................ 13

         C.   This Court Lacks Jurisdiction Over Plaintiffs' Claims Based on
             PFAS Contamination Because They Are, at Most, Tort Claims .............. 14

             i.     Intentionality: Plaintiffs Do Not Allege that the United States
                   Intended to Contaminate Their Property with PFAS or That
                   Contamination was the Direct, Natural, or Probable Result of
                   Air Force Actions ......................................................................... 15

             ii.    Substantiality: Plaintiffs Fail to Allege that the Government
                     Appropriated Any Benefit from the Contamination of Their
                   Properties or That the Government Preempted Their Right to
                   Enjoy Their Properties for an Extended Period of Time,

Rather Than Merely Inflicted an Injury that Reduces the Value of Their Properties ............................................................. 17

II.    The Court Should Also Dismiss Claims Pursuant to Rule 12(b)(6) Because Plaintiffs Have Failed to State Claims on Which Relief Can Be Granted ............ 21

A.    Plaintiff Highland Dairy Has Failed to Allege the Appropriation of a Cognizable Property Interest ....................................................... 22

B.    Several Plaintiffs Have Failed to Allege Contamination of Their Property ................................................................................ 22

C.    Plaintiff Highland Dairy's Claim That the United States has Taken its "Dairy Business" is Legally Untenable ................................................. 23

D.    Plaintiffs Highland Dairy and Rajen Dairy have Failed to Allege that the Air Force's Remediation Project has Taken Their Water Rights ......... 24

i.    Plaintiffs Have Not Alleged Ownership of a Water Right ........... 24

ii.    Plaintiffs Have Not Alleged That the Remediation Project Has Affected Beneficial Use ...................................................... 26

CONCLUSION ............................................................................................. 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acadia Tech., Inc. v. United States*,
   458 F.3d 1327, (Fed. Cir. 2006) .................................................................. 23

*Acceptance Insurance Companies, Inc. v. United States*,
   583 F.3d 849 (Fed. Cir. 2009) ..................................................................... 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 7, 16, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 7, 16

*Branch v. United States*,
   69 F.3d 1571 (Fed. Cir. 1995) ...................................................................... 26

*C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*,
   811 P.2d 899 (N.M. 1991) ........................................................................... 27

*Cary v. United States*,
   552 F.3d 1373 (Fed. Cir. 2009) .................................................................... 18

*Casitas Mun. Water Dist. v. United States*,
   708 F.3d 1340 (Fed. Cir. 2013) .................................................................... 10

*Chemours Co. FC, LLC v. EPA*,
   109 F.4th 179 (3d Cir. 2024) .......................................................................... 3

*Columbia Basin Orchard v. United States*,
   132 F. Supp. 707 (Ct. Cl. 1955) .................................................................... 14

*Devine v. United States*,
   152 Fed. Cl. 175 (2021) .......................................................................... 7, 17

*Hanson v. Turney*,
   94 P.3d 1 (N.M. Ct. App. 2004) ............................................................... 25, 26

*Holguin v. Elephant Butte Irrigation Dist.*,
   575 P.2d 88 (N.M. 1977) ............................................................................. 26

*In re Aqueous Film-Foaming Products Liab. Litig.*,
   No. 2:18-mn-2873-RMG, 2022 WL 4291357 (D.S.C. Sept. 16, 2022) ...................................... 2

*Katzin v. United States*,
   908 F.3d 1350 (Fed. Cir. 2018) .................................................................... 13

*Klamath Irr. Dist. v. United States,*
  635 F.3d 505 .................................................................................................. 21, 22

*Klamath Irrigation District v. United States,*
  113 Fed. Cl. 688 (Fed. Cl. 2013) ................................................................. 10

*Lindsay v. United States,*
  295 F.3d 1252 ..................................................................................................... 7

*Loretto v. Teleprompter Manhattan CATV Corp.,*
  458 U.S. 419 (1982) .......................................................................................... 11

*Lucas v. S.C. Coastal Council,*
  505 U.S. 1003 (1992) ........................................................................................ 23

*Midas Resources, Inc. v. United States,*
  168 Fed. Cl. 385 (Fed. Cl. 2023) ........................................................ 7, 10, 18

*Mildenberger v. United States,*
  91 Fed. Cl. 217 (2010) ............................................................................... 20, 24

*Moden v. United States,*
  404 F.3d 1335 (Fed. Cir. 2005) ............................................................ 15, 16, 17

*Moden v. United States.,*
  60 Fed. Cl. 275 (Fed. Cl. 2004) ..................................................................... 16

*Monterey Bay Unified Air Pollution Control Dist. for the People of Cal. v.*
  *U.S. Dep't of the Army,*
  176 F. Supp. 2d 979 (N.D. Cal. 2001) ........................................................ 13

*Morris v. United States,*
  392 F.3d 1372 (Fed. Cir. 2004) ..................................................................... 10

*Penna v. United States,*
  153 Fed. Cl. 6 (2021) ................................................................................. 17, 18

*Qwest Corp. v. United States,*
  48 Fed. Cl. 672 (Fed. Cl. 2001) ..................................................................... 24

*Reginella Constr. Co., Ltd. v. Travelers Cas and Sur. Co. of America,*
  971 F. Supp. 2d 470 (W.D. Pa. 2013) .......................................................... 23

*Reynolds v. Army & Air Force Exch. Serv.,*
  846 F.2d 746 (Fed. Cir. 1988) .......................................................................... 7

*Ridge Line, Inc. v. United States,*
  346 F.3d 1346 (Fed. Cir. 2003) ........................................................ 14, 17, 18, 20

*Sacramento Grazing Ass'n, Inc. v. United States,*
  154 Fed. Cl. 769 (Fed. Cl. 2021) ........................................................ 24, 26, 27

*Schooner Harbor Ventures, Inc. v. United States,*
  92 Fed. Cl. 373 (2010) ..................................................................................... 10

*Stewart v. United States*,
    130 Fed. Cl. 172 (Fed. Cl. 2017) ............................................................... 14

*Texas v. United States*,
    523 U.S. 296 (1998) .................................................................................... 10

*Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*,
    289 P.3d 1232 (N.M. 2012) ................................................................ 25, 26

*Trusted Integration, Inc. v. United States*,
    659 F.3d 1159 (Fed. Cir. 2011) .................................................................... 7

*United States v. Tohono O'Odham Nation*,
    563 U.S. 307 (2011) ................................................................................ 8, 10

*United States v. Willow River Power Co.*,
    324 U.S. 499 (1945) .............................................................................. 18, 19

*Yuba Nat. Res., Inc. v. United States*,
    904 F.2d 1577 (Fed. Cir. 1990) .................................................................. 24

**Statutes**

28 U.S.C. § 1491(a) ........................................................................................ 14

28 U.S.C. § 1500 ......................................................................................... 1, 8

42 U.S.C. § 300f(3) .......................................................................................... 4

42 U.S.C. § 300g-1(b)(1)(F) ............................................................................ 3

42 U.S.C. § 9621(e)(1) ................................................................................... 13

42 U.S.C. 300g-1 ............................................................................................. 3

N.M. Stat. Ann. § 72-12-1 (2023) .................................................................. 26

N.M. Stat. Ann. § 72-12-2 (2023) .................................................................. 26

N.M. Stat. Ann. § 72-2-1 (2023) .................................................................... 26

Pub. L. No. 106-65, 113 Stat. 512 (1999) ...................................................... 16

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 4, 6

RCFC 12(h)(3) .................................................................................................. 7

RCFC 52(c) ..................................................................................................... 17

**Regulations**

40 C.F.R. § 300.400(e)(1) .............................................................................. 13

40 C.F.R. § 300.410 .......................................................................................... 4

40 C.F.R. § 300.420 ................................................................................................. 4

**Other Authorities**

77 Fed. Reg. 26,072 (May 2, 2012) .......................................................................... 3

81 Fed. Reg. 33,250 (May 25, 2016) ........................................................................ 3

89 Fed. Reg. 32,532 (Apr. 26, 2024) .................................................................... 3, 4

89 Fed. Reg. 39,124 (May 8, 2024) .......................................................................... 4

N.M. Admin. Code § 19.26.2.7......................................................................... 25, 26

## INTRODUCTION

This case is about a class of chemicals: per- and polyfluoroalkyl substances ("PFAS"). PFAS are used in aqueous film-forming foam ("AFFF"), which the United States Air Force once used for fire suppression on its bases.  Cannon Air Force Base, in eastern New Mexico, is one such base.

Plaintiffs are residents and business owners near Cannon.  They allege that the Air Force's historical AFFF usage has contaminated groundwater in the area with PFAS.  Plaintiffs also allege that this contamination is spreading.  They allege that PFAS contamination, or the stigma of nearby PFAS contamination, has effected the taking for public use of an unspecified property interest by the United States.

Plaintiffs' claims are unsound.  For several reasons, this Court lacks subject matter jurisdiction. First, when Plaintiffs sued, several plaintiffs already had claims pending in district court based on the same operative facts – the Air Force's use of AFFF and the allegedly resulting PFAS contamination of their properties.  Thus, under 28 U.S.C. § 1500, this Court lacks jurisdiction over those plaintiffs' claims.  Second, other plaintiffs fail to allege that contamination of their properties has in fact occurred, pointing only to general contamination in areas near their properties.  Such plaintiffs do not possess ripe claims.  Third, this Court lacks jurisdiction because Plaintiffs' claims sound in tort.  In addition, putting aside these jurisdictional defects, Plaintiffs have failed to plead viable claims.  Plaintiffs have not alleged the taking of a cognizable property right or the physical invasion of any such an interests.  The United States therefore moves to dismiss Plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims.

## BACKGROUND

### I.    AFFF Usage at Cannon

AFFF usage at Cannon Air Force Base began in 1970 and consisted of four major categories.  Those four categories were: (1) mandatory fire training; (2) fire-suppression systems in hangars; (3) fire emergency responses; and (4) equipment testing.  Exhibit 1, Final Aqueous Film-Forming Foam Release Areas Phase 1 Remedial Investigation Work Plan, (Aug. 2021) ("RI") at § 2.5.1.  In 2016, the Air Force limited the use of AFFF to "real world emergencies." *Id*.  In 2018, the Air Force completed the full phase out of PFAS-containing AFFF at Cannon, except for certain limited applications.[1]  *Id*.

Additionally, since 1985, the Air Force has used propane, rather than jet fuel, for its training at Cannon.  *Id* at 3.5.3-3.5.3.2.  And as a result, Air Force training has primarily used water to suppress fires in training exercises since then.  The Air Force also installed a liner in the training area in 1985.  *Id* at 3.5.3.1.  The Air Force installed a new lined fire training area in 1997, at which it also mostly used water for training.  *Id.* at § 3.5.3.1.  By 2011, the Air Force had stopped using AFFF in fire training.  *Id*. at § 3.5.3.2.

### II.    PFOS and PFOA Background[2]

General knowledge of PFAS's potential adverse health effects has only come about recently.  *In re Aqueous Film-Foaming Products Liab. Litig.*, No. 2:18-mn-2873-RMG, 2022 WL 4291357 at 10-11 (D.S.C. Sept. 16, 2022) (describing EPA's research into health effects of PFAS as starting at "essentially ground zero" in the year 2000, and outlining how EPA's and DOD's

---

[1] In select hangars, and for emergency purposes where non-PFAS containing AFFF is insufficient. Ex. 1 at § 2.5.1.

[2] PFAS refers to a class of chemicals.  PFOS and PFOA, the chemicals relevant to these proceedings, belong to the PFAS class of chemicals.

understanding of PFAS's health hazards has evolved since then).  One of the earliest signals from the Environmental Protection Agency that PFAS could be harmful to human health was in 2012, when EPA included certain PFAS compounds among several other *unregulated* contaminants for monitoring by some public water systems.[3]  *See Revisions to the Unregulated Contaminant Monitoring Rule (UCMR 3)*, 77 Fed. Reg. 26,072-26,101 (May 2, 2012).  This monitoring program required certain large water systems to gather data between 2013 and 2015 on the presence of these contaminants to inform EPA's future determinations on whether to regulate them.  *Id*.

Then, in 2016, EPA released Lifetime Health Advisories (LHAs) for two specific PFAS compounds, PFOS and PFOA.  *Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate*, 81 Fed. Reg. 33,250-51 (May 25, 2016).  LHAs are non-enforceable, non-regulatory informational documents.  *See Chemours Co. FC, LLC v. EPA*, 109 F.4th 179, 185 (3d Cir. 2024); *see also* 42 U.S.C. § 300g-1(b)(1)(F) (SDWA providing that, for unregulated contaminants, EPA "may publish health advisories (which are not regulations) or take other appropriate actions for contaminants not subject to any national primary drinking water regulation").  LHAs describe contaminant levels below which no adverse health effects are expected over a lifetime of drinking water exposure. *See* 81 Fed. Reg. at 33,250.

In April 2024, EPA published a final rule under the Safe Drinking Water Act promulgating national primary drinking water standards that apply to six PFAS compounds, including PFOS and PFOA.  *PFAS National Primary Drinking Water Regulation*, 89 Fed. Reg.

---

[3] The EPA issued this regulation under the Safe Drinking Water Act, which authorizes EPA to set national health-based standards for drinking water in public water systems.  *See* 42 U.S.C. 300g-1.

32,532 (Apr. 26, 2024).  These regulations apply to public water systems and set enforceable limits on the maximum permissible levels of these contaminants in water delivered to users.  *See id.* at 32,573; 42 U.S.C. § 300f(3).

Finally, in May 2024 EPA published a final rule designating PFOS and PFOA as hazardous substances under CERCLA.  *Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances*, 89 Fed. Reg. 39,124-92 (May 8, 2024).

## III.    Air Force Efforts to Address PFAS

Beginning in 2015,[4] the Air Force began efforts to ensure that drinking water on and off of its installations did not contain PFAS above the EPA's LHAs.  As part of that effort, it conducted a CERCLA PFAS Preliminary Assessment[5] at Cannon, which culminated in a Final Preliminary Assessment Report For Perfluorinated Compounds at Cannon AFB.  Exhibit 2, Final Preliminary Assessment Report For Perfluorinated Compounds at Cannon AFB.  As of November 2023, the Air Force had spent upwards of $67 million in its efforts to address PFAS contamination.  Motion to dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (Site-Specific) by United States of America, Exhibit I "Cannon AFB PFAS Public Update" at 3, *In re Aqueous Film-Forming Foams Products Liab. Litig.*, No. 2:18-mn-02873-RMG, ECF No. 4551-11 (D.S.C. 2024).

Also, as part of its efforts, the Air Force, with landowner consent, collected samples from private properties at twenty-five locations. *See* Exhibit 3, Cannon Expanded SI at 15.  The Air Force relied on information provided by property owners to select the most appropriate sampling

_____

[4] This response pre-dates the EPA's rule listing PFOS and PFOA as CERCLA hazardous substances.

[5] Ex. 2 at 9; *see* 40 C.F.R. §§ 300.410, 300.420

location at each of these properties, with preference for collecting samples from tap or spigot locations at or near the well head or pump house and before the water supply is introduced into any storage tanks or treatment tanks. *Id*. at 11. From this testing, the Air Force detected concentrations of certain PFAS compounds above the 2016 LHA values at three off-base locations. Exhibit. 4 at 15, Well Permits. The Air Force notified the property owners from whom it had obtained these samples on August 24, 2018. First Amended Complaint, ECF No. 7 at ¶ 28, ("Complaint""); ECF No. 7, Exhibits A1, A2. The Air Force has offered and provided alternative drinking water for property owners with water above the 2016 LHAs, although some have rejected such deliveries. Ex. 3, at 15.

## IV.     Currently Pending District Court Litigation

Following the Air Force's disclosure, and before suing in this Court, several plaintiffs sued the United States, the Department of Defense, and the Air Force in district court. Complaint at ¶¶ 35, 47, 54, 62; Complaint, *Dorene Dairy General Partnership v. 3M Co.*, No. 2:20-cv-4263, ECF No. 1 (D.S.C. Dec. 9, 2020) ("Do-Rene Dairy Comp."); Complaint, *Vander Dussen v. 3M Co.*, No. 2:20-cv-4191, ECF No. 1 (D.S.C. Dec. 3 2020) ("Rajen Dairy Compl."); Complaint, *Schaap v. United States*, No. 2:19-cv-3288, ECF No.1 (D.S.C. Nov. 21, 2019) ("Highland Dairy Compl."); and Complaint, *Teune v. United States*, No. 2:19-cv-3290, ECF No. 1 (D.S.C. Nov. 11, 2019) ("Teune Compl."). Those plaintiffs are: Art Schaap, S. Renee Schaap, and Highland Dairy ("Highland Dairy"), Sybrand R. Vander Dussen, Jenise K. Vander Dussen, and Rajen Dairy ("Rajen Dairy"), Doug Handley, Irene Handley, Dustin Handley, and Do-Rene Dairy Inc. ("Do-Rene Dairy"), and Todd Teune and Carolyn Teune ("Day Star Dairy"). Complaint at ¶¶ 35, 47, 54, 62; *see generally* Do-Rene Dairy Compl., Rajen Dairy Compl., Highland Dairy Compl., Teune Compl. In their district court cases, these plaintiffs bring several

tort claims based on alleged PFAS contamination, including negligence, nuisance, and trespass. Do-Rene Dairy Compl. at ¶¶ 9-10, Rajen Dairy Compl. at ¶¶ 9-10, Highland Dairy Comp. at ¶¶ 94-150, Teune Compl. at ¶¶ 96-152. Those cases are currently part of multi-district litigation pending in the District of South Carolina. *In re Aqueous Film-Forming Foams Products Liab. Litig.*, No. 2:18-cv-2873 (D.S.C. 2018).

## V.    Air Force Monitoring Wells

To address the contamination, the Air Force is conducting pilot studies to treat the groundwater and prevent the migration of PFAS off-base. *See generally* Ex. 1.[6] As part of that effort, the Air Force has planned fifteen off-base monitoring wells. *See id.* at 4.9. The Air Force partnered with the State of New Mexico and installed three of the fifteen monitoring wells on state rights-of-way. *See generally* Ex. 4.

## VI.    Plaintiffs' Takings Claims

On August 23, 2024, Plaintiffs filed their initial complaint in this Court. ECF No. 1. They filed an amended complaint on September 13, 2024. Complaint at 24. Plaintiffs raise eight counts, each one alleging a taking of separate property. *Id*. at ¶¶ 30-90. Each count alleges that PFAS contamination has caused pecuniary harm to the respective owner: harm to property value; reduction in water quality; increased water monitoring and filtration costs; harm or anticipated harm to the operation of a business; and CERCLA liability. *Id.* Plaintiffs argue that these harms adversely affect their properties' values, such that takings have allegedly occurred. *See id.* In addition, Plaintiffs Highland Dairy and Rajen Dairy claim that Air Force remediation efforts

---

[6] Additionally, USDA has paid Highland Dairy more than $15 million in indemnity payments for its milk and cows. Motion to dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (Site-Specific) by United States of America, Exhibit J "Declaration of William Scott Marlow" at 3, *In re Aqueous Film-Forming Foams Products Liab. Litig.*, No. 2:18-mn-02873-RMG, ECF No. 4551-12 (D.S.C. 2024).

have taken putative water rights and that the placement of monitoring wells has taken real property rights. *Id.* at ¶¶ 32-33, ¶¶ 41-42. Plaintiffs appear to allege physical takings of these rights. *See id.* at ¶¶ 32-33, ¶¶ 41-42.

## STANDARD OF REVIEW

Under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), a complaint may be dismissed for lack of subject matter jurisdiction. In ruling on a motion to dismiss for lack of subject matter jurisdiction, the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). However, a plaintiff's jurisdictional allegations are not presumed true, and the Court may consider relevant evidence to resolve any factual disputes. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). "[T]he plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence[, and] [i]f the plaintiff cannot meet this burden, the court must dismiss the action for lack of jurisdiction." *Devine v. United States*, 152 Fed. Cl. 175, 182 (2021) (citing RCFC 12(h)(3)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain plausible factual allegations sufficient to give rise to the "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court accepts as true the plaintiff's factual allegations, it does not do the same for any conclusory legal assertions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). When the facts asserted, even when taken as true, do not entitle the claimant to a remedy, the complaint must be dismissed under Rule 12(b)(6). *See Midas Resources, Inc. v. United States*, 168 Fed. Cl. 385, 393 (Fed. Cl. 2023) (*quoting Lindsay v. United States*, 295 F.3d 1252. 1257 (Fed. Cir. 2002)).

## ARGUMENT

**I.    The Court Should Dismiss the Complaint Pursuant to Rule 12(b)(1) Because It Lacks Subject Matter Jurisdiction**

This Court lacks jurisdiction over the complaint for three reasons.  First, four plaintiffs – Do-Rene Dairy, Rajen Dairy, Highland Dairy, and Day-Star Dairy[7] – have currently pending district court cases based on the same operative facts, depriving this Court of jurisdiction under 28 U.S.C. § 1500. Second, the claims of many plaintiffs are unripe.  Third, the claims sound in tort.

### A.  This Court Has No Jurisdiction Over Claims that are Already Proceeding in District Court.

This Court lacks jurisdiction over claims by those plaintiffs who are already pursuing tort claims in district court based on alleged PFAS contamination.  In 28 U.S.C. § 1500, a statute with origins older than the Tucker Act, Congress directed that this Court "shall not have jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States."  28 U.S.C. § 1500.  This means that "[t]he CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents."  *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 311 (2011).  "Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit."  *Id.* at 317.  Thus, Section 1500 bars jurisdiction in this Court over a claim if a suit based on substantially the same operative facts is "pending in any other court."

---

[7] Reference to the dairy plaintiffs also includes the relevant individual plaintiffs as described in Background, Section IV and as described in the Complaint at ¶¶6-9

Plaintiffs Highland Dairy, Rajen Dairy, Do-Rene Dairy, and Day Star Dairy are all pressing tort claims in district litigation against the United States. Their district court claims are based on PFAS contamination from Cannon—the same operative facts as their claims here. These plaintiffs' district court complaints were filed before the complaint in this Court and their district court claims are currently pending. Thus, this Court lacks subject matter jurisdiction over their claims.

In their district court cases, these plaintiffs argue that AFFF usage at Cannon has caused PFAS contamination of their properties. They claim that the Air Force's use of PFAS was negligent, and that the infiltration of PFAS onto their properties constitutes a nuisance and trespass. *See* Do-Rene Dairy Compl. at ¶¶ 9-10, Rajen Dairy Compl. at ¶¶ 9-10, Highland Dairy Compl. at ¶¶ 94-150, Teune Compl. at ¶¶ 96-152.

Here, these plaintiffs likewise target the Air Force's use of AFFF at Cannon and the alleged migration of PFAS onto their properties from that use. *See* Complaint at ¶¶ 15-19. Plaintiffs allege similar transmission mechanisms in both cases: groundwater spread, irrigation with contaminated water, spreading of manure from cows who had been contaminated, and the transmission of stormwater runoff across the properties. *See id*. at ¶¶ 34, 44, 50, 57, 65, 80, 87. In both suits, these plaintiffs refer to the same history of AFFF release at Cannon as the source of their alleged PFAS contamination. *Compare* Complaint at ¶¶ 15-19 *with* Do-Rene Dairy Compl. at ¶¶ 8-12, 196-202; Rajen Dairy Compl. at ¶¶ 8-12, 200-207; Highland Dairy Compl. at ¶¶ 5-17, 61-62; and Teune Compl. at ¶¶ 5-17, 89-95.

The claims are thus based on the same operative facts – the Air Force's use of PFAS-containing AFFF at Cannon and resulting PFAS spread. *Compare* Complaint at ¶¶ 15-19 *with* Do-Rene Dairy Compl. at ¶¶ 8-12, 196-202; Rajen Dairy Compl. at ¶¶ 8-12, 200-207; Highland

Dairy Compl. at ¶¶ 5-17, 61-62; and Teune Compl. at ¶¶ 5-17, 89-95.  This Court, as a result,

lacks subject matter jurisdiction over these plaintiffs' claims and must dismiss them.  *See*

*Klamath Irrigation District v. United States*, 113 Fed. Cl. 688, 702 (Fed. Cl. 2013).  Congress has

not waived the United States' sovereign immunity for such redundant litigation. *See Tohono*

*O'Odham Nation*, 563 U.S. at 311.

### B.  Several of Plaintiffs' Claims Are Unripe

"[T]he Court of Federal Claims does not have jurisdiction over claims that are not ripe."

*Schooner Harbor Ventures, Inc. v. United States*, 92 Fed. Cl. 373, 378-79 (Fed. Cl. 2010) (*citing*

*Morris v. United States*, 392 F.3d 1372, 1375-76 (Fed. Cir. 2004)).  A claim "is not ripe for

adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed

may not occur at all." *Midas Resources*, 168 Fed. Cl. at 405 (*quoting Texas v. United States*, 523

U.S. 296, 300 (1998)).  A takings claim does not ripen until government action "currently

impinge[s] on [a plaintiff's] compensable property interest."  *Id*. (*quoting Casitas Mun. Water*

*Dist. v. United States*, 708 F.3d 1340, 1358 (Fed. Cir. 2013)).  Here, the Court lacks jurisdiction

over several plaintiffs' claims because they are not based on PFAS contamination, but instead on

speculation that PFAS might contaminate their properties in the future.  For the same reason, the

Court lacks jurisdiction over Highland Dairy's and Rajen Dairy's monitoring well claims because

no monitoring wells have been placed on their properties.

### i.    Plaintiffs Who Have Failed to Allege Current PFAS Contamination Do Not Have Ripe Claims

Many plaintiffs only speculate about future PFAS contamination.  Those allegations are

not concrete impingements of property interests on which a takings claim can be based, but

reflect, at most, unripe claims.

The Hatchers do not allege that their property is contaminated with PFAS.  Instead, the Hatcher Plaintiffs allege only that their property may become contaminated *in the future*.  For example, they state that "the *threat* of the permanent physical invasion of the property" has resulted in harm to their property values, and that as recently as 2022, there was "no PFAS measured upon the property."  Complaint at ¶ 11, ¶ 75 (emphasis added).  Similarly, the Hatchers assert that the "presence of PFAS *in the region, if not* in the water itself" has lowered the value of their personal home.  *Id*. at ¶ 73.  The Hatchers' allegations amount to the assertion that PFAS stigma has affected the value of properties in the general area. *See id*. at ¶¶ 70-75.  They do not allege that PFAS is present on their property.  They do not allege any physical invasion.  Their alleged physical takings claim, therefore, is unripe.[8]

Other plaintiffs likewise fail to allege that their properties are contaminated with PFAS.[9] Plaintiffs Do-Rene Dairy, Day-Star Dairy, and Desert Sun Dairy all base their claims on alleged

---

[8] Even if it is ripe, then the Hatchers and the other plaintiffs in this subsection would still fail to state a claim and should be dismissed under Rule 12(b)(6).  An alleged impact on value, without any physical invasion, is not a physical taking.  *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982) ("this Court has consistently distinguished between flooding cases involving a permanent physical occupation, on the one hand, and cases involving . . . *government action outside the owner's property that causes consequential damages within*, on the other. A taking has always been found only in the former situation.") (emphasis added).

[9] This inquiry is made challenging by Plaintiffs' failure to satisfy the pleading specificity requirement of Rule 9(i).  That rule requires a plaintiff to allege in his complaint "the specific property interest alleged to have been taken by the United States." Plaintiffs recite a list of injuries and conclude that "[t]aken together, the Government has taken substantially all or all the value" of the property.  *See e.g.* Complaint at 14-15.  That is not, and does not identify, a property interest, such as a fee or easement. This vague pleading creates uncertainty about what property interests the United States would possess should this Court find that the United States has taken property from Plaintiffs.  For example, whether Plaintiffs allege the taking of an easement or a fee interest or some other property right would have drastically different results on calculating just compensation and knowing what rights, if any, Plaintiffs would retain at the end of a successful case.  The Court should dismiss Plaintiffs' complaint for failure to state a claim because of their failure to comply with Rule 9(i)'s pleading requirement.  But if any aspect of Plaintiffs' complaint survives this motion to dismiss, the Court should at least require Plaintiffs

PFAS groundwater contamination affecting their property values, but none credibly allege PFAS contamination of their groundwater.  Indeed, each of these plaintiffs alleges that "[t]he dairies are under threat of imminent closure *in the event* that PFAS is determined to be in their water supplies[.]"  Complaint at ¶¶ 52, 60, 67.  Somewhat contradictorily, Desert Sun Dairy, who conducted testing, only found PFAS in groundwater at levels below EPA's 2016 LHA.  *Id*. at ¶ 64.  And Do-Rene Dairy concedes testing showed PFAS "at marginally acceptable levels."  *Id*. at ¶ 49.  However, Plaintiffs' statements about the "*threat* of *imminent* closure" of their dairy businesses suggest that there has been no groundwater contamination.  These statements within Plaintiffs' own complaint do not actually allege that Plaintiffs' properties have in fact been contaminated by PFAS.  It is Plaintiff's burden to demonstrate subject matter jurisdiction, and these allegations fail to meet that burden.[10]  It is not enough to claim "information and belief" that contaminated groundwater has resulted in contamination of their property.  *Id*. at ¶ 50, ¶ 57, ¶ 65.  Conclusory statements are insufficient and, moreover, they are undercut by other facts pled in the complaint.  Because Plaintiffs have failed to allege ripe claims—failed to sufficiently allege PFAS contamination in the groundwater or otherwise on these plaintiffs' properties—their claims are unripe.[11]

---

to file an amended complaint identifying the property interest the United States is alleged to have taken.

[10] If these two statements by Desert Sun Dairy and Do-Rene Dairy are true, then they are not substantial enough to allege a takings claim, and instead raise tort claims.  *See infra* Section I.C.ii.

[11] Such a dismissal should include any claims of PFAS contamination dependent on the use of groundwater, such as contamination from the spread of cow manure by cows who have consumed allegedly PFAS contaminated groundwater.

**ii.    Highland Dairy's and Rajen Dairy's Well Claims are Unripe Because the United States Has Not Drilled Wells On Their Property**

Plaintiffs Highland Dairy and Rajen Dairy claim that the Air Force has placed wells on their property and that this has effected a taking of their property. These claims are unripe: the Air Force has not drilled any wells on their respective properties.

These plaintiffs allege that by drilling wells "immediately adjacent" to their wells:

> the Government has, without legal authority, taken action in 2024 under a mischaracterization of rights afforded under the color of law of the State of New Mexico's Department of Transportation *to physically occupy* Plaintiffs' land and drill multiple wells *upon the property of Highland Dairy* without legal authority, without the consent of the landowner, and without just compensation.

Complaint at ¶33; *see also* Complaint at ¶42.

To date, however, the Air Force has drilled only three non-consumptive monitoring wells on land owned by New Mexico, and with the state's permission.[12]  *See generally* Ex. 4.  Thus, if these plaintiffs are in reality claiming that the Air Force *intends* to drill such wells on their lands, the claims are unripe.  A physical taking claim ripens "when the government directly appropriates private property or engages in the functional equivalent of a 'practical ouster of [the owner's] possession.'" *Katzin v. United States*, 908 F.3d 1350, 1361 (Fed. Cir. 2018).  It has not done so here.  Highland Dairy's and Rajen Dairy's well placement claims are either unripe or simply fail on the merits – the Air Force has drilled no such wells.

---

[12] The Air Force's contractor secured non-consumptive well permits from the Office of the State Engineer, and Utility and Traffic Control/Roadway Work permits from the state Department of Transportation.  The state permits were not required by law but were instead obtained in the interest of cooperation between the United States and New Mexico.  42 U.S.C. § 9621(e)(1) exempts the Air Force from seeking state permits in connection with its CERCLA response for actions conducted "on-site."  "On-site" is defined as "the areal extent of contamination and all suitable areas in very close proximity necessary for the implementation of the response action." 40 C.F.R. § 300.400(e)(1); *see Monterey Bay Unified Air Pollution Control Dist. for the People of Cal. v. U.S. Dep't of the Army*, 176 F. Supp. 2d 979, 990 (N.D. Cal. 2001).

**C. This Court Lacks Jurisdiction Over Plaintiffs' Claims Based on PFAS Contamination Because They Are, at Most, Tort Claims**

The Court of Federal Claims does not have jurisdiction over tort claims. 28 U.S.C. § 1491(a); *see Stewart v. United States*, 130 Fed. Cl. 172, 177 (Fed. Cl. 2017). While Plaintiffs denominate their PFAS claims as takings claims (*i.e.*, an appropriation of property by the government), they are, at most, tort claims (*i.e.*, claims of trespass) over which this Court lacks jurisdiction.

When presented with an alleged takings claim, this Court must first determine whether "treatment under takings law, as opposed to tort law, is appropriate under the circumstances." *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003). The Federal Circuit in *Ridge Line* set forth a two-part test to answer this question. *Id*. at 1355. That test asks "whether the effects [the plaintiff] experienced were the predictable result of the government's action, and whether the government's actions were sufficiently substantial to justify a takings remedy." *Id*. To establish the first prong, known as the "intentionality" prong, the plaintiff must show that "the government intend[ed] to invade a protected property interest or the asserted invasion [was] the 'direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.'" *Id*. (*quoting Columbia Basin Orchard v. United States*, 132 F. Supp. 707, 709 (Ct. Cl. 1955)). As to the second, known as the "substantiality" prong:

> [T]he nature and magnitude of the government action must be considered. Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner[']s right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value.

*Id*. at 1356.

14

If a plaintiff fails to satisfy the *Ridge Line* test, then his claim is not subject to treatment under takings law and is, at best, a claim for trespass over which the Court lacks jurisdiction. Plaintiffs fail to meet either prong of the *Ridge Line* test.

      **i.**      **Intentionality: Plaintiffs Do Not Allege that the United States Intended to Contaminate Their Property with PFAS or That Contamination was the Direct, Natural, or Probable Result of Air Force Actions**

Plaintiffs do not satisfy *Ridge Line*'s first prong because they allege no facts showing the United States intended to take their property for public use via PFAS contamination or that a taking of their properties was the direct, natural, or probable result of the Air Force's use of AFFF. Significantly, Plaintiffs do not allege that the United States intended to take their property. And if they are implicitly asserting that a taking of their properties for public use by PFAS contamination was the direct, natural, or probable result of authorized government action, their complaint still fails to state a taking claim. When considering *Ridge Line*'s prong one in a chemical contamination case, the Court must consider three antecedent factual questions. *Moden v. United States*, 404 F.3d 1335, 1344 (Fed. Cir. 2005). A plaintiff must show that at the time of release, the government should have foreseen: "(1) that the chemical solvents included a contaminant; (2) that the chemical solvents would be released into the groundwater; and (3) that the contaminant would naturally migrate to the [plaintiff's property]."[13] *Id*. Plaintiffs must allege facts meeting all three requirements to satisfy *Ridge Line*'s first prong. *See id*. They do not do so.

---

[13] For purposes of this litigation, the *Moden* inquiry should be understood as asking if the government should have foreseen: (1) that the released substances included a hazardous chemical; (2) that the hazardous chemicals would be released into the groundwater; and (3) that the hazardous chemicals would naturally migrate to Plaintiffs' properties.

First, Plaintiffs have failed to allege that the United States should have known, at the time of its releases, that AFFF contained a contaminant, specifically, PFAS. Plaintiffs do not identify specific releases at specific times, instead only vaguely alleging AFFF usage at Cannon from "1970 and continuing for nearly 50 years[.]" Complaint at ¶ 15. Beyond that, they allege no facts showing the United States should have known PFAS was harmful to human health during the alleged years of release. *See Moden*, 404 F.3d at 1344 (focusing on knowledge of the contaminant's toxicity); *Moden v. United States*, 60 Fed. Cl. 275, 285 (Fed. Cl. 2004) ("[T]he court must assess the government's knowledge of TCE *and its properties* at the time of the authorized act in order to determine whether the results of the authorized act would have been foreseeable and predictable to defendant.") (emphasis added). They do not plead any facts, plausible or otherwise, showing the necessary overlap between AFFF releases at Cannon and the United States' knowledge of PFAS' potential health effects. Plaintiffs' claims fail *Moden* and *Ridge Line* for this reason alone.[14]

Second, Plaintiffs have alleged no facts satisfying *Moden*'s second inquiry, that the United States should have foreseen at the time of its AFFF releases that a harmful contaminant would be released into the groundwater. This is likely because Plaintiffs do not allege facts to support the threshold knowledge factor. Without allegations on *Moden*'s first inquiry, they cannot make any allegations on the second.

---

[14] Plaintiffs state that in the year 2000, Congress required "the Department of Defense to purify or provide alternate sources of clean water for agricultural water that is determined to be contaminated with PFAS." Complaint at ¶ 22. This is a legal conclusion to which the Court owes no deference and it can reject it. *See Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The United States also challenges the assertion as a factual matter. Plaintiffs provide no citation for this assertion. Complaint at ¶ 22. As best the United States understands the allegation, this is a reference to the National Defense Authorization Act for Fiscal Year 2000, which is entirely bereft of the requirement alleged by Plaintiffs. *See* National Defense Authorization Act for Fiscal Year 2000, Pub. L. No. 106-65, 113 Stat. 512 (1999).

Third, Plaintiffs have not alleged any facts showing that the Air Force should have known that PFAS would naturally migrate from Cannon to Plaintiffs' properties. Yet the focus of the *Moden* inquiry is what the United States should have known *at the time of release*. *See Moden*, 404 F.3d at 1344 ("three antecedent 'occurrences' . . . at the time [the chemical] was used[.]"). While Plaintiffs allege that PFAS has now migrated to some of Plaintiffs' properties, they have provided no allegations that the United States should have known at the time of release that PFAS would migrate in this way. It is Plaintiffs' burden to demonstrate subject matter jurisdiction by a preponderance of the evidence. Nothing in their complaint plausibly alleges facts necessary to support treatment under takings law. As such, the Court lacks subject matter jurisdiction. *Devine v. United States*, 152 Fed. Cl. 175, 182 (Fed. Cl. 2021).

> **ii.** **Substantiality: Plaintiffs Fail to Allege that the Government Appropriated Any Benefit from the Contamination of Their Properties or That the Government Preempted Their Right to Enjoy Their Properties for an Extended Period of Time, Rather Than Merely Inflicted an Injury that Reduces the Value of Their Properties**

Plaintiffs have failed to allege that the United States appropriated a benefit to itself through contamination of Plaintiffs' properties, as required by the substantiality prong of *Ridge Line*. *See Ridge Line*, 346 F.3d at 1355; *Penna v. United States,* 153 Fed. Cl. 6, 23-24 (2021). *Penna*, an earlier PFAS takings case, shows why. There, the Pennas had attempted to argue that the United States appropriated a benefit by treating the Pennas' property as a "receptacle for untreated AFFF" and thereby avoided "the time and expense to handle [the] AFFF properly." *Penna*, 153 Fed. Cl. at 24 (internal quotations omitted). Following the close of the Pennas' case at trial, the court allowed the United States to file a motion for judgment on partial findings pursuant to RCFC 52(c). *Id*. at 14-15. It then granted the United States' motion because the Pennas had not "presented any evidence that the government was required to dispose of AFFF (at

17

the time of its use) in any particular manner, as the chemicals at issue were not, and are not, identified or regulated as hazardous by CERCLA, RCRA, or Pennsylvania's HSCA." *; Id.* at 24.

Plaintiffs' complaint presents a nearly identical situation to the one in *Penna* and fails *Ridge Line*'s substantiality prong for the same reason. Plaintiffs do not even allege that the United States has forced them to become an "AFFF receptacle" as the Pennas did.[15] Plaintiffs do not allege any benefit the United States obtained through alleged contamination of their properties.

Nor could the Air Force's use of AFFF on base be a "benefit" under *Ridge Line*'s substantiality prong. The focus of the inquiry is on whether the physical invasion of the plaintiff's property extracted some benefit. *Cary v. United States*, 552 F.3d 1373, 1380 (Fed. Cir. 2009) (rejecting plaintiff's benefit argument because the benefits "[were] not benefits *resulting from the invasion* that destroyed the properties.") (emphasis added). Plaintiffs must demonstrate some benefit that flowed to the United States because of the contamination of Plaintiffs' properties with PFAS. They allege nothing showing the United States obtained a benefit from the alleged contamination of Plaintiffs' properties with PFAS.

Nor have Plaintiffs sufficiently alleged that the United States has "preempt[ed] the owner's right to enjoy property for an extended period of time, *rather than merely inflict*[ing] *an injury that reduces its value.*" *Ridge Line*, 346 F.3d at 1356 (emphasis added). At bottom, a physical takings claim asserts that the United States has appropriated property or a specific property right; it is not merely a claim that some government action has devalued property. *See Midas Resources*, 168 Fed. Cl. at 394-95 (distinguishing between physical and regulatory takings); *United States v. Willow River Power Co.*, 324 U.S. 499, 502 (1945) ("But not all

---

[15] An argument that this Court rejected. *Penna*, 153 Fed. Cl. at 24.

economic interests are 'property rights'; only those economic advantages are 'rights' which have the law back of them, and only when they are so recognized may courts compel others to forbear from interfering with them or to compensate for their invasion.").

Here, a reduction in property value appears to be Plaintiffs' only complaint. In their complaint, Plaintiffs outline the various ways that PFAS contamination has affected the *value* of their property and summarize their claims by stating that their property value has been "substantially eliminated" or they "[have] been deprived of all or substantially all of *the value* of the real propert[ies] [or businesses]." Complaint at ¶¶ 34, 44, 52, 57, 65, 71, 82, 89. However, they fail to identify any cognizable property right the United States has purportedly taken for public use.[16] As explained above, in the United States' ripeness argument in Section I.B., *supra*, many of Plaintiffs' claims even fail to allege PFAS contamination. Yet an economic interest standing alone is not property. Only real, personal, or intangible property – property rights that have "the law back of them," *Willow River Power Co.*, 324 U.S. at 502[17] – is within the scope of the Fifth Amendment.

For example, the Hatchers claim that no homes in their subdivision have sold, and that their personal home is supposedly "unmarketable at assumed market values." Complaint at ¶¶ 11, 73. Nowhere in the complaint do they allege that the United States has affected their right to alienate the property, subdivide it, or otherwise preempted any other right in their "bundle of

---

[16] It is worth reiterating that Plaintiffs have not specified the property interest taken as required by Rule 9(i). Such a failure is particularly relevant in this context because it is further evidence that Plaintiffs likely do not have a cognizable property interest that they have been preempted from exercising.

[17] For the same reasons, this Court should dismiss these claims under Rule 12(b)(6). Plaintiffs' allegations have failed to allege a specific property interest, and if they have, they have failed to allege that PFAS contamination has *taken* that interest. Accordingly, they have failed to state a claim.

sticks." In fact, the Hatchers were able to sell their home. Complaint at ¶ 11. They simply did so at a price lower than they wanted. But obtaining a reduced price for property is not a taking—the Hatchers have no property right to sell their home at a particular price. They have not alleged an actual property right that has been appropriated by the government, "rather than . . . an injury that reduces the property's value." *Ridge Line*, 346 F.3d at 1356.

The Loughs have similarly failed to identify a property right that has been appropriated. Like the Hatchers, they claim PFAS contamination has reduced their property's value, but also like the Hatchers, they have not alleged or shown any material preemption of the use and enjoyment of their property rights. *See* Complaint at ¶¶ 77-83. That they still reside on the property rebuts such a claim. *Id*. at ¶ 77.

It is the same situation with the Loughs' water rights. As an initial matter, it is not clear what water rights the Loughs possess, as water rights in New Mexico are subject to a detailed statutory regime, which they fail to address. *See infra* Section II.D.ii. (discussing New Mexico water law). Instead, the Loughs allege that because the water may be contaminated, its value has been "substantially eliminated." Complaint at ¶ 80. But they do not allege that the United States has prevented them from drawing groundwater or otherwise preempted the exercise of any water right, so they fail to satisfy this prong of the *Ridge Line* inquiry. *See, e.g. Mildenberger v. United States*, 91 Fed. Cl. 217, 240-47 (2010) (dismissing claims that pollution had taken plaintiffs' water rights by applying Florida law on riparian water rights).

The Dewbres' claims match the Hatchers' and the Loughs' and present the same insufficiencies. They merely claim a loss in property value without asserting a loss of specific property rights, and like the Loughs, they still reside on their property. Complaint at ¶ 84. While

the Dewbres have alleged that PFAS has contaminated their groundwater, they have similarly failed to allege the content of their water rights, or that they have been taken.  *See id*. at ¶¶ 84-90.

In short, no Plaintiff has alleged facts establishing that the United States preempted Plaintiffs' use or exercise of their rights of property ownership for an extended period.  They are freely able to invite guests to the properties, to exclude persons they wish to exclude, to alienate the properties (something at least one plaintiff has already done), and to continue to live on and use the properties (something several plaintiffs appear to continue to do).  Complaint at ¶¶ 11, 73, 77, 84.  They do not allege anything to the contrary.  They thus fail to satisfy *Ridge Line*'s prong two.

As a result, Plaintiffs have failed to allege facts supporting either of the prongs of the *Ridge Line* inquiry, and so their claims sound, at most, in tort.  Indeed, Plaintiffs themselves appear to agree: as discussed above, several plaintiffs brought tort claims based on the same facts years ago.  Plaintiffs should not now be allowed to recast their tort claims as takings claims.  Inquiry into Plaintiffs' claims through the lens of *Ridge Line* accomplishes precisely what the test was set out for.  It reveals that Plaintiffs have pursued a tort claim under the guise of a takings claim.  The claims should be dismissed for lack of jurisdiction.

## II.    The Court Should Also Dismiss Claims Pursuant to Rule 12(b)(6) Because Plaintiffs Have Failed to State Claims on Which Relief Can Be Granted

To establish a takings claim, a plaintiff must show two things.  First, a plaintiff must show a cognizable property interest.  *See, e.g.*, *Klamath Irr. Dist. v. United States*, 635 F.3d 505, 511 (Fed. Cir. 2011).  Second, a plaintiff must show government action amounting to a taking of

that property interest.  *Id*.  Here, because many of Plaintiffs' claims, even if true, do not make this showing, the Court should dismiss them.[18]

### A.  Plaintiff Highland Dairy Has Failed to Allege the Appropriation of a Cognizable Property Interest

Highland Dairy has not sufficiently alleged ownership of a cognizable property interest in support of its claimed taking.  Highland Dairy and the Schaaps raise a taking claims as to the land and improvements occupied by Highland Dairy's facilities, and upon which the Schaaps reside.  Complaint at ¶ 6.  But they never allege they own that property.  Instead, Highland Dairy states that "[t]hrough titular interests, real estate purchase contracts, and lease / option agreements the Schaaps *control* 3,593 acres of land[.]"  *Id*. at ¶ 6 (emphasis added).  The necessary implication is, therefore, that Highland Dairy and the Schaaps do *not* own the property for which they bring their claim.  For instance, if they have a lease for some portion of the land at issue, someone else owns the property.  Highland Dairy never alleges to the contrary and never alleges facts to support their ownership of a specific cognizable property interest.  Because they have not alleged facts to show a cognizable property interest, the Court should dismiss their claims pursuant to Rule 12(b)(6).

### B.  Several Plaintiffs Have Failed to Allege Contamination of Their Property

For the same reasons several claims are unripe, Section I.B., *supra*, those same plaintiffs have failed to state a claim.  The Hatchers have not alleged that their property has been contaminated by PFAS.  *See* Complaint at ¶ 11, ¶¶ 70-76; *supra* Section I.B.  They have not alleged any facts showing a taking of a protectible property interest.  They therefore fail to state a claim.

---

[18] Plaintiffs' failures on *Ridge Line* prong two also provide grounds for dismissal under rule 12(b)(6).  *See supra* note 17.

Other plaintiffs state only upon "information and belief" that their properties are contaminated – conclusory statements that are contradicted by their own allegations showing their properties are not in fact contaminated or that they have no basis to make any plausible assertion about contamination.  *See* Complaint at ¶¶ 48-69, ¶¶ 77-83.  Even under a Rule 12(b)(6) standard of review, facts alleged upon "information and belief" are not well-pleaded when contradicted by other facts alleged in the complaint.  *See Ashcroft*, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged") (emphasis added) (citations removed); *Reginella Constr. Co., Ltd. v. Travelers Cas and Sur. Co. of America*, 971 F. Supp. 2d 470, 475 (W.D. Pa. 2013) ("To be more specific, the Court may draw inferences only to the extent that they are supported by or are consistent with the well-pleaded factual allegations; where the plaintiff's inferences would contradict the well-pleaded factual allegations, the Court cannot accept them.").  Because these Plaintiffs have failed to plausibly allege that PFAS has contaminated their properties, they have failed to allege a taking.

### C.  Plaintiff Highland Dairy's Claim That the United States has Taken its "Dairy Business" is Legally Untenable

The Court should dismiss Highland Dairy's claims for a taking of its "business" because such claims fail to state a claim on which relief can be granted.  Plaintiff Highland Dairy appears to be asserting that the United States has taken its dairy business, but it alleges no facts to support such a taking.  *See* Complaint at ¶ 31.  The entirety of Highland Dairy's argument is that it was "compelled" to undertake certain regulatory actions.  *Id*.  But even if federal regulations required Highland Dairy to take certain actions with respect to meat or dairy containing PFAS, compliance with those regulations is not a taking of the business as a whole.  *See Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332, (Fed. Cir. 2006) (*citing Lucas v. S.C. Coastal Council*,

505 U.S. 1003, 1027-28 (1992) (other citations omitted).  For that matter, Highland Dairy has not

alleged any USDA regulations were used to "compel" any actions.  Plaintiffs allege no *facts* to

support an actual taking of the business, like the government stepping in and taking over

Highland Dairy's operations, controlling its business decisions, receiving its income, or deciding

how to expend the business's resources.  *See e.g. Qwest Corp. v. United States*, 48 Fed. Cl. 672,

695-96 (Fed. Cl. 2001) (discussing business takings cases in which the United States

"appropriate[d] a privately-owned business for its own purposes[.]").  In short, a business's

regulatory compliance is not a taking of that business and cannot state a claim for a taking of it.

And in any event, the Court should dismiss claims for lost livestock or dairy sales.  Just

compensation does not include lost profits as a matter of law.  *See Yuba Nat. Res., Inc. v. United

States*, 904 F.2d 1577, 1581-82 (Fed. Cir. 1990) (describing lost profits as consequential damages

that are an inappropriate element of just compensation).

### D.  Plaintiffs Highland Dairy and Rajen Dairy have Failed to Allege that the Air Force's Remediation Project has Taken Their Water Rights

Plaintiffs Highland Dairy and Rajen Dairy both claim that the Air Force's PFAS

remediation efforts have resulted in a taking of water rights.  The Court should dismiss these

claims because Plaintiffs have not alleged ownership of a water right, nor have they alleged an

impact to any water right.

### i.    Plaintiffs Have Not Alleged Ownership of a Water Right

State law generally defines the scope of property rights, and this is especially so in regard

to water.  *See Sacramento Grazing Ass'n, Inc. v. United States*, 154 Fed. Cl. 769, 783 (Fed. Cl.

2021); *Mildenberger*, 91 Fed. Cl. at 241.  Thus here, New Mexico law defines the contours of

Highland Dairy's and Rajen Dairy's water rights.  They allege that they have permits to use

groundwater.  A permit to use water, however, is not a compensable property interest for purposes of the Fifth Amendment.

Neither plaintiff has alleged a specific water right that has been impacted by the Air Force's remediation project.  Plaintiffs' only allegations are that the Air Force has:

> [F]alsely asserted, in defiance of the authority of the New Mexico State Engineer and without compliance with any state law governing the control of subterranean water rights, that it has an unfettered and unrestricted right to capture and redirect millions of gallons of groundwater daily for their own purposes which rights are, pursuant to state law, within the longstanding permitted rights belonging to the Schaaps and Highland. In furtherance of this usurpation of the Plaintiffs' water rights, the Government has drilled extraction, testing, and monitoring wells, immediately adjacent to Highland's permitted wells (destroying all conventions about protecting existing rights as typically controlled by the State Engineer), as well as drilled injection wells far from Highland Dairy, all of which has caused and will cause the further taking of property without just compensation.

Complaint at ¶ 32; *see also* Complaint at ¶ 41 (alleging the same for Rajen Dairy).

At best, by reference to the New Mexico State Engineer and "permitted rights," Plaintiffs assert that they have a water permit, which is a conditional and limited authorization to use water under New Mexico law, but a permit is *not* a water right as defined by New Mexico law.  "A water permit is an inchoate right, and is the necessary first step in obtaining a water right. It is the authority to pursue a water right . . . ."  *Hanson v. Turney*, 94 P.3d 1, 3 (N.M. Ct. App. 2004) (cleaned up); *see also* 19.26.2.7 New Mexico Administrative Code ("NMAC")  (in surface water context, defining "Permit" as "[a] document issued by the state engineer that authorizes the diversion of water *from a specific point of diversion, for a particular beneficial use, and at a particular place of use, in accordance with the conditions of approval . . . A permit in itself does not constitute a water right*") (emphases added); *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 289 P.3d 1232, 1240 (N.M. 2012).

Plaintiffs have also completely failed to indicate the amount or purpose of their alleged permits, and so failed to specify what any alleged water right would even entail. *Acceptance Insurance Companies, Inc. v. United States*, 583 F.3d 849, 855 (Fed. Cir. 2009) ("As the first step in our analysis, we must identify what, if anything, was the subject of the alleged taking." (citing *Branch v. United States*, 69 F.3d 1571, 1575 (Fed. Cir. 1995))); *see also* 19.26.2.7 NMAC (defining "Water right" and identifying its elements); *Sacramento Grazing Association*, 154 Fed. Cl. at 776 (plaintiffs alleged a taking of "beneficial use of stock water sources").

In New Mexico, adjudicated rights and a permit are distinct. An adjudication is a statutory process that ultimately results in the final determination of water rights. *See Tri-State Generation*, 289 P.3d at 1241 (describing the statutory adjudication process as "an essential function in the final determination of water rights[.]"). A permit is merely a grant of permission from the State Engineer to use water but does not itself constitute a water right. 19.26.2.7 NMAC; *Hanson*, 94 P.3d at 3. Until an adjudication, no water rights have been determined. *See Tri-State Generation*, 289 P.3d at 1240-41.

In short, these plaintiffs' mere reference to a permit fails to sufficiently plead any cognizable property interest capable of being taken. The Court should dismiss these claims under Rule 12(b)(6).

### ii.    Plaintiffs Have Not Alleged That the Remediation Project Has Affected Beneficial Use

Even assuming plaintiffs possess some kind of valid water right, they have failed to allege a taking of those rights. Under New Mexico law, all water rights—surface or groundwater—are limited to beneficial use. N.M. Stat. Ann. §§ 72-2-1, 72-12-1, 72-12-2 (2023); *Tri-State Generation*, 289 P.3d at 1242; *see also Holguin v. Elephant Butte Irrigation Dist.*, 575 P.2d 88, 92 (N.M. 1977) ("[W]ater belongs to the state which authorizes its use. The use may be

acquired but there is no ownership in the corpus of the water."), *overruled on other grounds by C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*, 811 P.2d 899, 901 (N.M. 1991). And these plaintiffs allege no facts at all that they have been unable to exercise any alleged rights to use the water because of the Air Force's remediation project. There are no allegations, for instance, that the United States has blocked their access to water, reduced the availability of any flow they are actually entitled to, or otherwise prevented them from exercising their rights (which, of course, they never identify). *See, e.g.*, *Sacramento Grazing Ass'n*, 154 Fed. Cl. at 776. Plaintiffs allege no facts supporting any claim that the Air Force's remediation pumping project has taken these plaintiffs' ability to make use of groundwater. The Court should therefore dismiss them for failure to state a claim on which relief can be granted.

## CONCLUSION

Because this Court lacks subject matter jurisdiction, and because, in any event, Plaintiffs fail to state a claim, the Court should dismiss Plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6).

October 29, 2024                          Respectfully submitted,

                                         TODD KIM
                                         Assistant Attorney General
                                         United States Department of Justice
                                         Environment & Natural Resources Division

                                          s/ *Young A. Kang*
                                         YOUNG A. KANG
                                         Trial Attorney
                                         Natural Resources Section
                                         P.O. Box 7611
                                         Washington, DC  20044-7611
                                         Phone: (202) 322-8378
                                         young.kang@usdoj.gov
                                         *Attorney for Defendant*